UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-10229-GW(MRWx) | Date | July 10, 2019 |
|---|---|---|---|
| Title | *Randy Baten v. Michigan Logistics, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS RULING ON DEFENDANTS MICHIGAN LOGISTICS, INC., CALIFORNIA LOGISTICS, INC., AND WESTERN DELIVERY & LOGISTICS, LLC'S MOTION TO COMPEL ARBITRATION [28]

Attached hereto is the Court's Ruling on Defendants' Motion to Compel. The Motion is DENIED.

The Court sets a status conference for July 18, 2019 at 8:30 a.m.

: 

Initials of Preparer   JG

<u>*Baten v. Mich. Logistics, Inc., et al.*</u>, Case No. 2:18-cv-10229-GW-(MRWx)
Ruling on Motion to Compel Arbitration

**I. Background**

In a First Amended Class and Collective Action Complaint ("FAC"), Randy Baten ("Plaintiff) has sued – on behalf of himself and all other similarly situated individuals – Michigan Logistics, Inc. d/b/a Diligent Delivery Systems ("MichDil"), California Logistics, Inc. d/b/a Diligent Delivery Systems ("CalDil"), Western Delivery & Logistics, LLC d/b/a Diligent Delivery Systems ("WesDil" and, collectively, "Diligent"), and Larry Browne ("Browne" and, together with Diligent, "Defendants") for: 1) unfair business practices, pursuant to Cal. Bus. & Prof. Code § 17200; 2) violation of Cal. Lab. Code §§ 510, 1194, 1198 & Wage Order No. 9; 3) violation of Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199 & Wage Order 9; 4) unlawful wage deductions, in violation of Cal. Lab. Code § 221 and Wage Order 9; 5) violation of Cal. Lab. Code §§ 218.5, 226.7, 512 & Wage Order No. 9; 6) violation of Cal. Lab. Code §§ 201-203; 7) violation of Cal. Lab. Code §§ 226(a), 226(d), 226.3, 1174(d), 1174.5 and Wage Order 9; 8) violation of Cal. Lab. Code § 2802 and Wage Order 9; and 9) violation of 29 U.S.C. § 206.

Diligent now moves[1] to compel arbitration based on an agreement between CalDil and Plaintiff. Plaintiff has not disputed that the action he has brought would fall within the scope of the relevant provision (if the provision was enforceable to begin with and still in force). As a result, the allegations in the FAC are generally not necessary to discuss, other than to point out that Plaintiff alleges that Defendants jointly employed him as a delivery driver in Los Angeles from approximately April 2010 through approximately August 2017, *see* FAC ¶¶ 1, 10, 65, and that drivers such as Plaintiff should have been classified as employees, not independent contractors, meaning that Defendants generally (allegedly) were, and continue to be, in violation of California and/or federal wage and hour protections. *See id.* ¶ 2; *see also id.* ¶¶ 96-97.

The agreement in question here is an Owner Operator Agreement ("OOA")

---

[1] Browne is not a moving party on this motion. At the time Diligent filed the motion, Browne was challenging the Court's personal jurisdiction over him. On February 12, 2019, the Court ruled that it had personal jurisdiction over Browne. *See* Docket No. 41; *see also* Docket No. 40.

CalDil and Plaintiff entered into on or around April 5, 2010.  *See* Declaration of Sheryl Bell ("Bell Decl.") ¶ 4 & Exh. A, Docket No. 28-3; Declaration of Randy Baten ("Baten Decl.") ¶ 3, Docket No. 37.  The specific provision in question (*i.e.* paragraph 15 of the OOA) provides *inter alia* that CalDil and Plaintiff "both agree to resolve any disputes between [CalDil and Plaintiff] directly or with an agreed form of Alternative Dispute Resolution.  Both [CalDil and Plaintiff] agree that neither will engage or participate in a collective or class suit against the other."  Bell Decl., Exh. A, ¶ 15.  In paragraph 16 – the paragraph immediately following the provision in question on this motion – the OOA also specifically provides that "Paragraphs 6, 7, 9, 10, 11 and shall [*sic*] survive the termination of this Agreement."  *Id.*, Exh. A, ¶ 16.  The parties appear to agree that the OOA between CalDil and Plaintiff terminated as of August 6, 2017, after Plaintiff was given seven-days' written notice of its termination upon his own termination on July 31, 2017.  *See* Baten Decl. ¶ 4 & Exh. A; Bell Decl., Exh. A, ¶ 17(a) ("Either party shall have the right at any time during the term hereof to terminate this Agreement by giving the other party seven (7) days written notice to such effect.").

On August 1, 2018, Plaintiff submitted a Demand for Arbitration ("the Demand") to the American Arbitration Association ("AAA") – though Defendants' counsel did not actually receive the Demand until September 12, 2018.  *See* Declaration of Steven A. Groode ("Groode Decl.") ¶¶ 2, 6 & Exhs. A, C, Docket No. 28-2; Declaration of Rachel Bien ¶ 3, Docket No. 36.  On September 6, 2018, Plaintiff's counsel inquired with Defendants' counsel as to whether Diligent would agree to use the AAA.  *See* Groode Decl. ¶ 4 & Exh. A.  On September 12, 2018, Defendants' counsel declined AAA's administration of an arbitration, but attempted to meet and confer with Plaintiff's counsel regarding selection of an arbitrator and arbitration service, stating "My client(s) do not agree to use AAA to administer his arbitration.  We can confer to try and reach an agreement on an arbitrator and then use his/her applicable service to arbitrate the matter."  *Id.* ¶ 5.  Defendants' counsel proposed four arbitrators to Plaintiff's counsel on October 16, 2018, but never received a substantive response.  *See id.* ¶¶ 7-8.  Plaintiff then filed this lawsuit in Los Angeles County Superior Court on November 2, 2018.  *See* Docket No. 1-1.  On December 19, 2018, in response to Defendants' attempt to meet and confer regarding this motion, Plaintiff's counsel communicated that they "decline[d] to submit

2

plaintiff's claims to arbitration." *See id.* ¶ 10 & Exh. F.

**II. Analysis**

In what it characterized as its "initial thoughts" on this motion, the Court first grappled with the enforceability of the provision in question (what the Court previously referenced as the "DRP," a reference that continues herein). *See* Tentative Ruling, Docket No. 48, at pgs. 4-8 of 14. However, because the Court cannot enforce an agreement that is no longer in force (whether initially enforceable/valid or not), the Court must first determine whether the DRP survived termination of the OOA.

A. <u>Survivability of the DRP</u>

As outlined in the Court's Tentative Ruling, in order to prevail on this motion, Diligent must show the existence of a valid arbitration agreement. *See also Performance Team Freight Sys., Inc. v. Aleman*, 241 Cal. App. 4th 1233, 1239 (2015). Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. Additionally, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641; *see also Bank of Am. Nat. Tr. & Sav. Ass'n v. W. End Chem. Co.*, 37 Cal.App.2d 685, 693 (1940). While California has a strong public policy in favor of arbitration, "this strong policy does not override ordinary principles of contract interpretation." *Laymon v. J. Rockcliff, Inc.*, 12 Cal.App.5th 812, 820 (2017).

The Court concludes that the DRP did not survive termination of the OOA. First, the fact (that the survivability provision (Paragraph 16) immediately follows, but excludes, the DRP) objectively reflects, at the time of contract formation, a lack of intent for the DRP to survive termination of the OOA. Diligent argues that the survivability clause should not be interpreted to contain an exhaustive list of provisions that survive termination. To bolster this argument, Diligent points to other provisions that both CalDil and Plaintiff intended to survive termination but that were not included in the survivability clause (the "Excluded Provisions"). *See* Defendants' Supplemental Briefing 6:13-17, Docket No. 50; Reply in Support of Motion to Compel 16:24-17:5, Docket No. 38. Because this motion has only raised issues regarding the survivability of the DRP,

the Court will not determine whether the Excluded Provisions survive termination of the OOA. However, it is important to note that there is specific language of survival in at least one of the Excluded Provisions. *See* Bell Decl., Exh. A, ¶ 17(c) ("Operator agrees to the payment by Operator to DILIGENT of $75.00 *in the event Operator terminates the agreement* within 90 days") (emphasis added). Even if it were intent on avoiding the obviously-logical use of Paragraph 16 to make clear its apparent (or at least its current) intent on this point, Diligent could have similarly included other language demonstrating survivability within the DRP to ensure that end. Given the surrounding survival language and the exclusion of such language within the DRP, it would be unreasonable to expect the non-drafting party to infer and intend that the DRP also survives termination. As such, Diligent has not met its burden of establishing that a valid arbitration agreement exists following the August 6, 2017 termination of the OOA.

   Diligent argues that this Court is bound on this issue by *Litton Financial Printing Division v. N.L.R.B.*, 501 U.S. 190 (1991), where the Court recognized a presumption in favor of survivability. The Court already expressed, in its Tentative Ruling, reasons for why it does not find this contention persuasive, considering the reasoning (and the limits thereof) in both *Litton* and certain Sixth Circuit decisions Diligent had cited to the Court. *See* Tentative Ruling, at pgs. 8-10 of 14. Moreover, *Litton* involved an arbitration provision within a collective bargaining agreement ("CBA"). Even if Diligent is correct in arguing that the Supreme Court did not limit application of this rule of contract interpretation to arbitration clauses, this Court believes that the *Litton* holding is tailored to its specific facts – a provision within a CBA entered into by two sophisticated parties (a union and a corporate employer). The Court is unaware of any Ninth Circuit precedent adopting Diligent's view of *Litton*'s scope outside of the context of a CBA and/or a situation involving an admitted arbitration provision.

   Diligent also argues that Plaintiff exhibited an intent for the DRP to survive when he submitted a demand for arbitration after the OOA had been terminated. The Court agrees that under California law, the Court can look at acts of parties that occurred after the execution of the contract and before any controversy had arisen regarding the disputed provision. *See* 1 Witkin, Summary of California Law *Contracts* § 772, at 828 (11th ed. 2018). However, this principle of contract interpretation applies to disputes

4

about *ambiguous* terms or provisions. *See Crestview Cemetery Ass'n v. Dieden*, 356 P.2d 171, 176 (Cal. 1960); *Bettis Rubber Co. v. Kleaver*, 104 Cal.App.2d 821, 826 (1951); *Dabney v. Dabney*, 9 Cal.App.2d 665, 670 (1935). A term or provision is ambiguous when it is subject to several meanings or interpretations. *See Linton v. Cty. of Contra Costa*, 31 Cal.App.5th 628, 636 (2019). The survivability of the DRP is not ambiguous for the reasons discussed above. As such, the Court will not take Plaintiff's request to commence arbitration into consideration when determining whether the DRP survived termination of the contract.

Given the lack of guidance from the Ninth Circuit regarding the reach of *Litton* (at least in the fashion Diligent advocates) and the great ease with which Diligent could have included clear survival language, the Court finds that the DRP did not survive termination of the OOA.

B. <u>Free-Standing Agreement to Arbitrate</u>

Diligent also argues that there was an agreement to arbitrate apart from the DRP when Plaintiff demanded, and Diligent agreed to, arbitration. *See* Defendants' Supplemental Briefing 2:8-11. However, "[a]n acceptance must be absolute and unqualified . . . . A qualified acceptance is a new proposal." Cal. Civ. Code § 1585.

Diligent did not give an unqualified acceptance to Plaintiff's offer. Diligent's attorney replied to the offer stating: "My client(s) *do not agree* to use AAA to administer [the] arbitration. *We can confer to try and reach an agreement* on an arbitrator and then use his/her applicable service to arbitrate the matter." *See* Groode Decl. ¶ 5 (emphasis added). The Court finds that Diligent's reply constituted a counteroffer since the alleged "agreement" to arbitrate varied a term of the offer (the arbitrator). Because Plaintiff did not agree to this counteroffer, and instead filed the suit now before this Court, the parties did not enter into a free-standing agreement to arbitrate.

Diligent argues that negotiation over administrative details does not alter the existence of the agreement, and they cite to two cases[2] to support this argument. *See* Defendants' Supplemental Briefing 2:16-3:6. However, these cases focus on the *enforceability of agreed upon provisions* – an issue that arises after a court has

---

[2] *Brachfeld v. Hopkins*, No. CV1701443SJOSSX, 2017 WL 10436075 (C.D. Cal. Dec. 11, 2017); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).

5

determined that a contract was formed. At issue here is whether a contract was formed in the first instance by virtue of the parties' back-and-forth running from August-December 2018. California law has made clear that "'failure to reach a meeting of the minds on all material points prevents the formation of a contract *even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract*.'" *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 215 (2006) (quoting *Banner Entm't, Inc. v. Superior Court (Alchemy Filmworks, Inc.)*, 62 Cal.App.4th 348, 359 (1998)).

### C. Conclusion

Having reached the conclusions that the DRP did not survive termination of the OOA and that the parties' later attempt to come to an agreement regarding arbitration did not amount to an actual agreement on that point, there is no need for the Court to address the *enforceability* of the DRP (assuming its continued vitality), the class action waiver that is part of the DRP, or which parties now before the Court could enforce the DRP.

For the reasons expressed herein, supplemented where relevant by the earlier discussion in the Tentative Ruling, the court DENIES Diligent's motion.